In the Matter of INVESTORS SECURITY CORPORATION, Debtor.

Thomas P. RAVIS, Esq., Trustee for Investors Security Corporation, Plaintiff,

v.

J. William CARETTI & Dorothy A. Caretti, Defendants.

Civ. A. No. 75–1036.

United States Bankruptcy Court, W.D. Pennsylvania.

May 12, 1983.

James E. White, Pittsburgh, Pa., for plaintiff.

Robert G. Sable, Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

GERALD K. GIBSON, Bankruptcy Judge.

The matter presently before the Court is a Motion for Reconsideration and to Alter Judgments Entered on September 22, 1982 in favor of J. William Caretti and Dorothy A. Caretti. The motion has been filed by the Securities Investment Protection Corporation (SIPC), and Trustee for the liquidation of Investors Security Corporation in response to a Memorandum Opinion issued by this Court on September 22, 1982. The subject of the Memorandum Opinion was the objection of J. William Caretti and Dorothy A. Caretti to the Trustee's disallowance of claims brought by the Carettis pursuant to the provisions of the Securities Investors Protection Act of 1970, 15 U.S.C. § 78aaa *et seq.* (SIPA). Therein, the Court determined that the Caretti's were "customers" within the meaning of SIPA § 6(c)(2)(A)(ii) and were entitled to its protection. Accordingly, the Trustee's disallowance of the Carettis' claims was reversed and judgments were entered in their favor.

Presently, the Trustee and SIPC seek the Court's reconsideration of the judgments in light of additional arguments and a joint memorandum submitted in support thereof. The record having never been formally closed at the conclusion of the hearing on this matter in March, 1980, the Court has agreed to consider their additional arguments.

In addition thereto, the Trustee has filed a Motion to Expand the Record to include a transcript of testimony given by J. William Caretti in *United States v. Brown, McDonald, et al.* in the United States District Court for the Western District of Pennsylvania, Criminal No. 76–281. This Court has entered an order granting the relief requested.

The claims of J. William Caretti and Dorothy A. Caretti which were the subject of the aforementioned Memorandum Opinion arose out of a 1975 transaction between Dr. Caretti and Dale McDonald, broker for debtor Investors Security Corporation (ISC), wherein Dr. Caretti delivered to Mr. McDonald a check in the amount of twenty-four thousand dollars ($24,000). The Trustee for ISC had disallowed the separate claims of Dr. and Mrs. Caretti, each in the amount of $12,000, on the basis that the books and records of the debtor ISC did not indicate that either cash or securities were being held for the benefit of Dr. and Mrs. Caretti. Trustee argued that the Caretti's were not "customers" within the definition as provided in the Securities Investors Protection Act of 1970 (SIPA); and were therefore not entitled to its protection. In its Memorandum Opinion of September 22, 1982, the Court reversed the Trustee's disallowance of the Carettis' claims, and entered separate judgments in their favor.

In the joint memorandum in support of the motion presently before the Court, the Trustee and SIPC urge the Court to reconsider on the basis of the following additional arguments. A person who lends money to a broker pursuant to an agreement which provides for regular payments of interest is not entitled to the protection afforded "customers" under SIPA. Further, they contend that the Carettis loaned their funds to the debtor, and are therefore general creditors and not "customers". In the alternative, the Trustee and SIPC argue that a certain letter agreement between the parties (Objector's Exhibit F) constituted an investment contract which claimants held on the filing date. Accordingly, the Carettis have no filing date net equity position which could be reimbursed or satisfied.

After careful consideration of the expanded record, counsel's motions, and their brief in support thereof, the Court remains satisfied that the transaction in the case at bar was a deposit of cash by claimants with the debtor for the purchase of securities, and not a loan. The Court is firmly convinced that the Carettis fall squarely within the definition of "customer" as set forth in the SIPA statute, and are therefore entitled to its protection. Accordingly, the Motion to Alter Judgments entered in the Carettis' favor is denied.

The Court reiterates its previous findings of fact and conclusions of law as follows. Upon application of the Security Investors Protection Corporation (SIPC), Judge Daniel J. Snyder, United States District Court, Western District of Pennsylvania, appointed Thomas P. Ravis as trustee for the liquidation of the debtor pursuant to 15 U.S.C. § 78eee(b)(3). By order of Judge Snyder, the liquidation proceeding of the debtor was referred to this Court on September 26, 1975.

At the March 13, 1980 hearing on this matter, the following testimony was presented. On March 17, 1975, Dale McDonald, a representative of Investors Security Corporation (ISC) met with Dr. Caretti at Dr. Caretti's residence in Greensburg, Pennsylvania, at Dr. Caretti's invitation. Mr. McDonald represented to Dr. Caretti that he was a broker-dealer representing ISC, and provided a business card to that effect. (Objectors' Exhibit 1). He further represented that ISC had various investment options available, one of which was the deposit of cash with the corporation. Mr. McDonald stated that if Dr. Caretti would deposit cash with the corporation, Mr. McDonald would purchase securities and pay Dr. Caretti a certain amount of cash on a monthly basis. He also informed Dr. Caretti that ISC was a member of the Security Investment Protection Corporation (SIPC), and as such, SIPC would guarantee that funds deposited were insured to certain limits; namely $50,000 for equities and $20,000 for cash deposits. In conjunction therewith, Mr. McDonald provided Dr. Caretti with literature to that effect. Included in that literature was a leaflet which bore the designation "SIPC" in large boldface print at the top, and "Investors Security Corporation, 231 Monroeville Mall, Monroeville, PA 15146" at the bottom. Therein, the following was stated: "The major function of SIPC is to provide funds for use, if necessary, to protect the customers of a

SIPC member firm in the event the firm is liquidated under the provisions of the 1970 Act ... if necessary, SIPC will advance funds to the trustee to enable him to pay the remaining claims of customers up to $50,000, except that in the case of claims for cash ... not more than $20,000 may be paid with funds advanced by SIPC". The following text appeared in italics on the brochure: "The text of this brochure has been prepared and made available by the Securities Investor Protection Corporation, as of October, 1971. Changes therein may be made only by SIPC." (Objectors' Exhibit 2). In addition, Mr. McDonald orally represented to Dr. Caretti the information contained in Exhibit 2.

Testimony indicates that Dr. Caretti closely examined all literature in Mr. McDonald's presence. Dr. Caretti testified that he wished to invest a sum in the amount of $24,000; said sum representing partial proceeds from the sale of his prior residence. After careful consideration of Mr. McDonald's oral and written representations at the March 17, 1975 meeting, Dr. Caretti delivered to Mr. McDonald a personal check at his home on that same date. The check was drawn on the account of J. William Caretti and Dorothy A. Caretti in the amount of $24,000, payable to Investors Security Corporation (ISC). The check, offered into evidence at the hearing, bore the endorsement "Investors Security Corporation." (Objectors' Exhibit 3). It was Dr. Caretti's clear testimony that the aforementioned check was given to Mr. McDonald with the mutual understanding that he would purchase securities. (Transcript p. 8, 1.8; p. 15, 1.11).

Pursuant to the SIPA provision limiting recovery for cash deposits to $20,000, [SIPA § 6(f)(1)(A), 15 U.S.C. § 78fff(f)(1)(A)], Mr. McDonald suggested that the $24,000 fund be separated into two equal accounts of $12,000; one bearing the name of J. William Caretti, and the other bearing that of Dorothy A. Caretti. Evidencing that intent, customer data cards and security receipts were executed at the March 17, 1975 meeting, wherein it was indicated that monthly interest in the amount of $90.00

would be paid to both Dr. Caretti and his wife individually, beginning May 1, 1975 and every month thereafter. (Objectors' Exhibits 5 and 8). Mr. McDonald also indicated to Dr. Caretti that the deposit would be refunded within ten days upon investors' written request.

Shortly thereafter, Dr. and Mrs. Caretti received individual letters, dated March 19, 1975, and bearing the letterhead "Investors Security Leasing Corporation", "ISLC", Box 84, Monroeville, PA 15146. The letters, signed by William Brown, stated in pertinent part as follows: "This is to certify that I am in receipt of $12,000. Should you have need of this money, it will be refunded with interest due, within 10 business days. In exchange for the use of your money, we agree to pay you $130.74 on May 1, 1975; and $90.00 for all following months ... Should you have any questions, I am sure that Mr. McDonald will be glad to be of service to you." (Objectors' Exhibit F).

Dr. Caretti testified that upon receipt of the March 19, 1975 letter, he was not suspicious of the letterhead bearing the name "Investors Security Leasing Corporation", (ISLC) because of its substantial similarity to "Investors Security Corporation" (ISC). Prior to the receipt of the letter, he was unaware of the ISLC entity. Further, at no time did Mr. McDonald represent to Dr. Caretti that he was dealing in any capacity other than as a broker of ISC.

Payments were received by Dr. and Mrs. Caretti in May and June, 1975. Checks representing July interest payments were returned by the Bank marked "insufficient funds". Thereafter, the Carettis individually requested the refund of the $12,000 cash investments by letters dated September 11, 1975. Having received no response thereto, Dr. and Mrs. Caretti filed individual customer claims in the liquidation proceeding of Investors Security Corporation (ISC). Therein, the Carettis set forth the following. On March 17, 1975, each made a $12,000 cash deposit with the debtor for the purpose of purchasing securities. Debtor agreed to make a return of earnings to

customer on the cash deposit at an annual rate of 9% and the earnings are in the amount of $225., not counting earnings which were paid. Thus, each of the Carettis claim the amount of $12,225 as due from the debtor.

Thereafter, the Carettis received notice of the trustee's disallowance of their claims, dated April 7, 1977, wherein the following was stated:

> Since the books and records of the Debtor, Investors Security Corporation, do not indicate that either cash or securities were being held for your benefit, your claim for cash or securities has been *disallowed* because you are not within the definition of "customer," as contained in Section 6(c)(2)(A)(ii) of the Securities Investor Protection Act of 1970 (viz: "... persons ... who have claims on account of securities *received, acquired or held by the debtor* from or for the account of such persons ... and shall include any person who has *deposited cash with the debtor* for the purpose of purchasing securities ...") and therefore, you do *not* have a valid "customer claim" for a "net equity", as that term is defined in Section 6(c)(2)(A)(iv) of the Act, which may be satisfied under the provisions of Section 6(f)(1)(A) of the Act. (Objectors' Exhibit 7).

On May 6, 1977, Dr. and Mrs. Caretti filed objections to the trustee's disallowance of their claims, wherein it was alleged that objectors were "customers" within the definition of SIPA, for they deposited funds with the debtor for investment purposes.

Further testimony at trial by James E. Moody, accountant appointed to serve the receiver of Investors Security Leasing Corporation (ISLC), reveals the following. Mr. Moody and receiver obtained from the Securities and Exchange Commission books and records which bore no external identification, but were purported to be those of ISLC. Entries in the cash receipts journal of ISLC dated March 18, 1975, reflect a deposit in the amount of $24,000 in the ISLC account, with the explanation that $12,000 was allocated to the account of J.

William Caretti, and $12,000 to the account of Dorothy A. Caretti.

The cash disbursement journal reveals a check dated May 1, 1975, payable to J. William Caretti in the amount of $130.74 (No. 458); and a check of the same date and amount payable to Dorothy A. Caretti (No. 459). Mr. Moody also testified that nowhere on the original check in the amount of $24,000 was there any indication that it was deposited in the ISLC rather than the ISC account.

Parties stipulated in open court that the records of Investors Security Corporation (ISC) do not reflect a transaction with Dr. and Mrs. Caretti.

The Court now turns to the definition of "customer" as set forth in the SIPA statute. SIPA § 6(c)(2)(A)(ii) defines "customers" as follows:

> "customers" of a debtor means persons (including persons with whom the debtor deals as principal or agent) who have claims on account of securities received, acquired or held by the debtor from or for the account of such persons (I) for safekeeping, or (II) with a view to sale, or (III) to cover consummated sales, or (IV) pursuant to purchase, or (V) as collateral security, or (VI) by way of loans of securities by such persons to the debtor, and shall include persons who have claims against the debtor arising out of sales or conversions of such securities, *and shall include any person who has deposited cash with the debtor for the purpose of purchasing securities,* but shall not include any person to the extent that such person has a claim for property which by contract, agreement, or understanding, or by operation of law, is part of the capital of the debtor or is subordinated to the claims of creditors of the debtor; ... (Emphasis added).

In the Memorandum Opinion of September 22, 1982, the Court further found that Mr. McDonald had the absolute authority to bind the debtor. It was upon his representations that Dr. Caretti, acting with due diligence, based his investment decision. The mere happenstance that Mr. McDonald

chose to deposit the Caretti check in the ISLC account rather than in the ISC account after the check had left Dr. Caretti's possession and control should in no way hinder the Carettis' classification as "customers".

Turning to the arguments set forth by SIPC and Trustee in support of the Motion to Reconsider and Alter Judgments of September 22, 1982, the Court is firmly convinced that the Carettis deposited funds with the debtor for purposes of purchasing securities. The Carettis' relationship with the debtor was that of customers-broker, not creditors-debtor, notwithstanding counsels' arguments to the contrary.

The Trustee and SIPC place great emphasis on the Carettis' entitlement to regular payment of interest. They also stress that there were no representations with respect to the purchase of any particular stock; nor was there written indication on any document that securities would be purchased. However the Court finds that none of the above is significant in characterization of the transaction at bar. Counsel also attach great significance to Brown's post-deposit letters to the Carettis wherein the transaction is described by Brown as a loan. The Court stresses that Brown's subsequent characterization does not alter the original transaction between Dr. Caretti and Mr. McDonald.

After careful consideration of the additional matter presented by the Trustee and SIPC in their Motion for Reconsideration and brief in support thereof, the Court is satisfied that the Carettis are "customers" within the meaning of SIPA § 6(c)(2)(A)(ii), and are entitled to its protection. Accordingly, the Motion to Alter Judgments of September 22, 1982 in favor of the Carettis is denied.

An appropriate order will be entered.